**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| REALTIME DATA LLC d/b/a IXO, | |
| Plaintiff, | C.A. No. 17-1544-GMS |
| v. | |
| PURE STORAGE, INC., | |
| Defendant. | |

**PLAINTIFF REALTIME DATA LLC'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANT'S MOTION (D.I. 11) TO DISMISS FOR FAILURE TO STATE A CLAIM**

January 25, 2018                              BAYARD, P.A.

OF COUNSEL:                                  Stephen B. Brauerman (No. 4952)
                                             Sara E. Bussiere (No. 5725)
Marc A. Fenster                              222 Delaware Avenue, Suite 900
Brian D. Ledahl                              Wilmington, DE 19801
Reza Mirzaie                                 (302) 655-5000
Paul A. Kroeger                              sbrauerman@bayardlaw.com
C. Jay Chung                                 sbussiere@bayardlaw.com
RUSS, AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor         *Attorneys for Plaintiff Realtime Data LLC*
(310) 826-7474
Los Angeles, CA 90025-1031
mfenster@raklaw.com
bledahl@raklaw.com
rmirzaie@raklaw.com
pkroeger@raklaw.com
jchung@raklaw.com

# TABLE OF CONTENTS

**Page(s)**

I.  RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ......................1

    A.  The Asserted Patents Claim Digital-Data Compression Inventions Aimed Toward Solving Problems Unique to Digital Computer Data ....................2

    B.  Prior Court Orders Confirm Patent Eligibility Of The Asserted Patents..........2

II.  LEGAL STANDARDS ........................................................................3

III.  PURE STORAGE FAILS TO DEMONSTRATE THAT ANY OF THE CLAIMS OF THE FOUR PATENTS-IN-SUIT ARE INVALID UNDER §101. .................3

    A.  Pure Storage Cannot Clearly And Convincingly Establish That The Patent Claims Are Directed To An Abstract Idea Under *Alice* Step 1. .................3

        1. Examining the Patents confirms that they claim technological solutions to technological problems, not abstract subject matter. ...................4

        2. Pure Storage's flawed arguments mischaracterize the law and the claims. ...........................................................................7

            a. Pure Storage's arguments regarding the '728/'203 Patents are flawed..................................................................7

            b.      Pure Storage's arguments regarding the '751 Patent are flawed..................................................................11

            c. Pure Storage's arguments regarding the '908 Patent are flawed..................................................................12

    B.  Pure Storage Also Cannot Establish That the Claims Are Patent Ineligible Under *Alice* Step 2. ...................................................................14

        1. Under any reasonable characterization, the patented claims include limitations that are unconventional................................................14

        2. Pure Storage's arguments under step 2 are based on attorney arguments that not only rely on a misapplication of controlling law, but are also contradicted by the Patents themselves. ................................17

        3. The claims do not preempt use in all fields.........................................18

    C.  Pure Storage's "Remaining Claims" Shortcuts Also Fail..............................19

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Affinity Labs v. Amazon.com*,
  838 F.3d 1266 (Fed. Cir. 2016)............................................................. 13

*Alice Corp. v. CLS Bank Int'l*,
  134 S. Ct. 2347, 2354 (2014).............................................................. 1, 4

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*
  841 F.3d 1288, 1293 (Fed. Cir. 2016)..................................................... 13

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
  827 F.3d 1341, 1349–50 (Fed. Cir. 2016)................................................ 17

*buySAFE v. Google, Inc.*,
  765 F. 3d 1350 (Fed. Cir. 2014)............................................................ 13

*Cal. Institute of Tech. v. Hughes Commcn's Inc.*,
  No. 2:13-cv-07245-MRP-JEM, 2014 U.S. Dist. LEXIS 156763 (C.D. Cal Nov. 3 2014)....... 15

*Card Verification Solutions, LLC. v. Citigroup Inc.*,
  No. 13-C-6339, 2014 U.S. Dist. LEXIS 137577 (N.D. Ill. Sept. 29, 2014) ............. 4

*Content Extraction v. Wells Fargo Bank*,
  776 F.3d 1343 (Fed. Cir. 2014).............................................................. 12

*Cyberfone Systems, LLC v. CNN Interactive Group, Inc.*,
  558 F. Appx. 988 (Fed. Cir. 2014)........................................................... 12

*DDR v. Hotels.com LP*,
  773 F.3d 1245, 1257 (Fed. Cir. 2014)....................................................... 6

*Digitech Image Tech. LLC v. Electronics for Imaging, Inc.*,
  758 F.3d 1344 (Fed. Cir. 2014).............................................................. 12

*Enfish, LLC v. Microsoft Corp*,
  822 F.3d 1327, 1337 (Fed. Cir. 2016)....................................................... 5

*Estee Lauder v. L'Oreal*,
  129 F.3d 588, 595 (Fed. Cir. 1997)......................................................... 21

*FairWarning IP v. Iatric Sys., Inc.*,
  839 F.3d 1089 (Fed. Cir. 2016).............................................................. 13

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
    --- F.3d ---, 2018 WL 341882, at *2 (Fed. Cir. Jan. 10, 2018). ........................................... 5, 14

*In re TLI Communications LLC Patent Litigation*,
    823 F.3d 607 (Fed. Cir. 2016) .................................................................................................. 12

*Intellectual Ventures I LLC v. Capital One Financial Corp.*,
    850 F.3d 1332 (Fed. Cir. 2017) .......................................................................................... 11, 12

*Intellectual Ventures I LLC v. Symantec Corp.*,
    838 F.3d 1307 (Fed. Cir. 2016) ............................................................................................... 13

*JSDQ Mesh Techs. LLC v. Fluidmesh Networks, LLC*,
    No. 16-CV-212-GMS, 2016 WL 4639140 (D. Del. Sept. 6, 2016) ........................................... 4

*MAZ Encryption Techs. LLC v. Blackberry Corp.*,
    No. 13-304-LPS, 2016 WL 5661981 (D. Del. Sept. 29, 2016) ................................................ 22

*Realtime Data LLC v. Actian Corp. et al.*,
    Case No. 15-cv-463-RWS-JDL, Dkt. No. 184 (E.D. Tex. Nov. 30, 2015) ............................... 3

*Realtime Data LLC v. Carbonite, Inc.*,
    Case No. 17-cv-121, D.I. 70 (E.D. Tex. Sept. 20, 2017) .......................................................... 1

*TDE Petroleum Data Sol., Inc. v. AKM Ent., Inc.*,
    657 Fed. Appx. 991 (Fed. Cir. 2016) ..................................................................................... 12

*TQP Dev., LLC v. Intuit Inc.*,
    2014 WL 651935, *4 (E.D. Tex. Feb. 19, 2014) .................................................................... 15

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329, 1337 (Fed. Cir. 2017) .................................................................................... 12

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709, 714–17 (Fed. Cir. 2014) ................................................................................... 13

*Verint Sys. Inc. v. Red Box Recorders Ltd.*,
    226 F. Supp. 3d 190, 192 (S.D.N.Y. 2016) ............................................................................... 9

*Visual Memory LLC v. Nvidia Corp.*,
    867 F.3d 1253, 1257 (Fed. Cir. 2017) ............................................................................ 6, 11, 14

Under *Alice* step 1, the claims at issue are not abstract, but rather are limited only to a particularized subset of the non-abstract realm of digital-data compression. Instead of focusing on the entirety of the claims, Pure Storage, Inc. ("Pure Storage") relies on a stripped-down summary of the inventions and overstatements regarding the §101 legal standards. The claims are not "silent as to how" to practice the invention, as Pure Storage asserts, but rather spell out specific structures and processes (*e.g.*, using state machine, data accelerator, performing analysis that is not based solely on a descriptor, etc.) to improve the storage or transmission of digital data. Indeed, the claims provide specific technological solutions that improve computer capabilities—e.g., improving the ability to more effectively compress/decompress digital data so as to increase the capacity of a computer system to store more data or to transfer data more efficiently.

Pure Storage also cannot satisfy its burden under *Alice* step 2. The claim elements require much more than well-understood, routine, conventional activities for solving the then-existing problems in the field of digital-data compression. Pure Storage's argument that the claims are implemented with "generic" or "conventional" components is factually and legally incorrect.

The Asserted Patents and related patents have gone through §101 scrutiny before. For example, only a few months ago, a court in Texas ruled that the asserted '728 and '908 Patents (and Pat. No. 8,717,204) are "inventive" and "directed to patent eligible subject matter" because they disclose "specific improvement[s] in computer capabilities."[1,2] Pursuant to the Texas court's ruling, any reasonable view of the claims makes clear they are patent-eligible.[3]

## I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

---

[1] Ex. 1: *Realtime Data LLC v. Carbonite, Inc.*, Case No. 17-cv-121, D.I. 70 (E.D. Tex. Sept. 20, 2017), *e.g.,* at 7, 10, 15, 16, 20. All emphasis in quotes are added in this brief.

[2] The other two patents asserted in this case are related to the patents the Texas court held to be patent eligible—the asserted '203 Patent is related to the asserted '728 Patent, and the asserted '751 Patent is related to the '204 Patent.

[3] A defendant in a related case pending in this District—*Realtime Data LLC v. Commvault Systems, Inc.* (Case No. 17-cv-925-GMS)—also filed a motion to dismiss under §101, on August 31, 2017. Realtime filed its opposition to that motion on October 5, 2017.

**A.    The Asserted Patents Claim Digital-Data Compression Inventions Aimed Toward Solving Problems Unique to Digital Computer Data**

The Patents deal specifically with problems arising in the realm of compressing "**[d]iffuse digital data**" which is "**a representation of data that ... is typically not easily recognizable to humans in its native form**."[4] The '728 and '203 Patents are directed to systems of digital-data compression/decompression utilizing multiple encoders/decoders (*e.g.,* content dependent, content independent) to compress/decompress data blocks based on an analysis of the specific data content/type. ('728 Patent at Abstract, 3:59–62.) The '908 Patent is directed to systems of digital data compression utilizing a plurality of different encoders for accelerated storage and retrieval of data. ('908 Patent at Abstract, 2:58–60). The '751 Patent is directed to systems for providing accelerated transmission of digital data and effectively increasing the bandwidth of the communication channel and/or reducing the latency of transmission, and uses, *e.g.,* a state machine. ('751 Patent at Abstract, 5:33–46, claim 1.)

**B.    Prior Court Orders Confirm Patent Eligibility Of The Asserted Patents**

In a detailed, twenty-two-page opinion issued on September 20, 2017, a court in Texas ruled that the '728 and '908 Patents asserted here, as well as Pat. No. 8,717,204 ('204 Patent), are patent eligible. (Ex. 1.) The other two of the four asserted patents are related to the patents that the Texas court ruled were patent-eligible—the asserted '203 Patent is related to the asserted '728 Patent, and the asserted '751 Patent is related to the '204 Patent. The Texas court rejected the same arguments advanced by Pure Storage here, including that the patents are purportedly about "generic components" (*e.g.,* Ex. 1 at 9, 11, 15, 17) or that they merely "describe function or outcome without any specificity" (*e.g., id.* at 12, 17, 20, 21). The court held that the patents are directed to patent eligible subject matter, and that they are also inventive. (*Id.*)

---

[4] *E.g.,* '908 Patent at 1:22-45; '728 Patent at 1:52–66; '751 Patent at 3:38-47.

In addition to that ruling, two judges in Texas also denied two other §101 motions involving two of the three patent families at issue here.[5] In November 2015, Magistrate Judge Love held that "an assessment of the claims at issues—by a careful reading of the claims themselves—does not clearly reveal that the patents are abstract." (Ex. 2.) In January 2016, District Judge Schroeder adopted this ruling and further held that under Realtime's view, namely, that the claims are directed to the compression of digital data, the argument that the patents are directed to an abstract idea "would fail" because the patents "provide technological solutions to problems arising specifically in the realm of computer technology." (Ex. 3.)

## II.    LEGAL STANDARDS

Under 35 U.S.C. §101, patent eligibility is to be construed broadly, and the exceptions are narrow. One exception is for "abstract ideas." The Supreme Court warns against interpreting the exception too broadly, as that could "swallow all of patent law" because "[a]t some level, 'all inventions ... embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014). The two step analysis of *Alice* is detailed below. "At the motion to dismiss stage, a patent claim can be found directed towards patent-ineligible subject matter if the ***only plausible reading*** of the patent must be that there is clear and convincing evidence of ineligibility." *JSDQ Mesh Techs. LLC v. Fluidmesh Networks, LLC*, 2016 WL 4639140, at *1 (D. Del. Sept. 6, 2016).

## III.    PURE STORAGE FAILS TO DEMONSTRATE THAT ANY OF THE CLAIMS OF THE FOUR PATENTS-IN-SUIT ARE INVALID UNDER §101.

### A.    Pure Storage Cannot Clearly And Convincingly Establish That The Patent Claims Are Directed To An Abstract Idea Under *Alice* Step 1.

---

[5] *Realtime Data LLC v. Actian Corp. et al.* (E.D. Tex. Case No. 15-cv-463) involved the '908 Patent asserted in this case, as well as Pat. Nos. 7,378,992 and 8,643,513, which are related to (and share identical written description with) the '728 and '203 Patents asserted here.

The threshold inquiry of the §101 analysis requires Pure Storage to demonstrate that the patent claims are directed to an "abstract idea," *i.e.*, an "idea of itself" or "fundamental truths or fundamental principles the patenting of which would pre-empt the use of basic tools of scientific and technological work." *Alice*, 134 S. Ct. at 2355. Pure Storage fails to do so here. Instead, Pure Storage applies a sweeping, incorrect reading of §101 caselaw to an oversimplified mischaracterization of the patented inventions. Under any fair characterization, the claims here are patent-eligible under controlling law because they provide particular, technical solutions to technical problems specific to compression of digital computer data.

### 1.   Examining the patents confirms that they claim technological solutions to technological problems, not abstract subject matter.

Under the Supreme Court's *Alice* framework, claims that "improve[] an existing technological process" or "solve a technological problem in 'conventional industry practice'" are patent eligible. *Alice*, 134 S. Ct. at 2358. The Federal Circuit has applied these standards in several controlling cases to uphold the patentability of claims challenged as abstract.

In *Finjan*, the Federal Circuit affirmed the patent-eligibility of a software patent that claimed "receiving" a computer program, "generating" a "security profile that identifies suspicious code," and "linking" the security profile to the computer program. *Finjan, Inc. v. Blue Coat Sys., Inc.*, --- F.3d ---, 2018 WL 341882, at *2 (Fed. Cir. Jan. 10, 2018). The claim at issue did not specify how to "identif[y] suspicious code." *Id.* But the court rejected the argument that the claims "do not sufficiently describe how to implement" any idea. *Id.* at *4. Instead, the court held that the patent at issue in *Finjan* "constitutes an improvement in computer functionality." *Id.* at *3.

In *Enfish*, the Federal Circuit reversed a patent-ineligibility ruling on a database patent, which the district court described as being directed to the abstract idea of "storing, organizing, and retrieving memory in a logical table." *Enfish, LLC v. Microsoft Corp*, 822 F.3d 1327, 1337 (Fed.

Cir. 2016). The court held that "describing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to §101 swallow the rule." *Id.* The Federal Circuit further criticized the district court's analysis because it "downplayed the invention's benefits" disclosed in the specification. *Id.* at 1337–38. Because the claims were "designed to improve the way a computer stores and retrieves data in memory," they were "directed to a specific implementation of a solution to a problem in the software arts" and, thus, "not directed to an abstract idea." *Id.* at 1339.[6]

In *Visual Memory*, the claims recited "memory" and "processor" with "operational characteristics" which "determines a type of data." *Visual Memory LLC v. Nvidia*, 867 F.3d 1253, 1257 (Fed. Cir. 2017). Here, the court rejected defendant's argument that the claims "are directed to no more than a desired result" or that the patent claims "nothing more than a black box." *Id.* at 1260-61. The court cautioned against over-simplifying the claims, and held that they were directed to "improvements to computer functionality" as opposed to "economic or other tasks for which a computer is used in its ordinary capacity." *Id.* at 1258-1261.[7]

As in *Finjan, Enfish, DDR*, and *Visual Memory*, the claimed inventions here provide particular technological solutions to overcome technological problems specific to the field of digital-data compression. The patents themselves state they are directed to problems unique to the realm of digital data, a form of data "not easily recognizable to humans in native form." (*E.g.*, '908

---

[6] Similarly, in *DDR*, the claims addressed "the problem of retaining website visitors." *DDR v. Hotels.com LP*, 773 F.3d 1245, 1257 (Fed. Cir. 2014). The court held that these claims "stand apart" from abstract claims "because they do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet." *Id.* Instead, "the claims recite[d] an invention that is not merely the routine or conventional use of the Internet." *Id.* at 1259. Thus, they were eligible because the patented claims were "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *Id.*

[7] *IOENGINE, LLC v. Interactive Media Corp.*, No. CV 14-1571-GMS, 2017 WL 67938, at *1 (D. Del. Jan. 4, 2017) ("courts 'must be careful to avoid oversimplifying the claims' by looking at them generally and failing to account for the specific requirements of the claims.").

Patent at 1:22-56; '728 Patent at 1:52–67.) In this realm, the patents describe using a combination of particular steps or structural computer components to help improve detection and exploitation of redundancies, for example, in the incoming strings of computer "1s" and "0s."

Like the inventions in *Finjan, Enfish* and *Visual Memory*, the patents teach specific improvements to the function of the computer parts themselves, such as computer memory and computer-data storage and retrieval mechanisms. For example, the '728 and '203 Patents describe various problems in the conventional art, including the "content sensitive behavior" of various compression techniques and the "extremely large number of application programs" and data types or content. (*E.g.,* '728 Patent at 2:29-3:19.) The '728 and '203 Patents solved these problems by providing systems utilizing two digital-data compression techniques (e.g., content dependent and content independent) to compress/decompress data blocks based on analysis of the specific content of data. And the patents overcame the issue of relying solely on a descriptor (e.g., file extensions such as ".doc," ".txt," etc.) by requiring a direct examination of the digital-data payload rather than examining just the descriptor. (*E.g.,* '728 Patent claim 1.) Similarly, the '908 Patent solved problems in the conventional digital data compression arts by providing systems utilizing two different encoders. (*E.g.,* '908 Patent claim 1.) And the '751 Patent solved problems in the conventional digital-data compression by utilizing a state machine to compress data blocks based on an analysis of the specific content of the data being encoded. (*E.g.,* '751 Patent claim 1.) The claimed solutions are not abstract. They are necessarily rooted in computer technology and aimed at solving limitations in then-existing digital-data compression.

In fact, applying the Federal Circuit's analysis, Realtime's patents present a clearer case of subject-matter eligibility than those held eligible in *DDR*. In that case, after analyzing the claimed inventions, which were directed to the "look and feel" of websites, the court held that, although

"the [asserted] claims do not recite an invention as technologically complex as an improved, particularized method of **digital data compression**," they were nonetheless patent eligible. *DDR, 773 F.3d at 1259.* The claims here thus present precisely the type of invention the Federal Circuit recognized as unquestionably patent eligible—particularized systems and methods of digital data compression. Indeed, applying the Supreme Court and Federal Circuit precedents, the court in Texas repeatedly held that the patents are §101 eligible. (Ex. 1-3.)

### 2. Pure Storage's flawed arguments mischaracterize the law and the claims.

#### a. Pure Storage's arguments regarding the '728/'203 Patents are flawed.

##### i. Pure Storage mischaracterizes the claims.

Pure Storage oversimplifies the claims in arguing that the '728/'203 Patents are directed to "analyzing data and processing data based on the analysis" (Mot. at 6) which it claims are "methods for manipulating data that 'humans have always performed'" (Mot. at 7.) As the Federal Circuit has repeatedly cautioned, "describing the claims at [] a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to §101 swallow the rule." *Enfish*, 822 F.3d at 1337. Pure Storage pursues the very reductionism that courts caution against. *Id.*[8] Pure Storage's mis-framing of the patented inventions is contradicted by the patent specifications and the claims, which make clear the claims are directed to particular digital-data compression systems. Indeed, even the key, summary-form aspects of the inventions are directed to technological solutions: systems of digital data compression/decompression utilizing two encoders (e.g., content dependent and content independent) to compress/decompress data blocks based on an analysis of the specific content of the data.

---

[8] *Verint Sys. Inc. v. Red Box Recorders Ltd.,* 226 F. Supp. 3d 190, 192 (S.D.N.Y. 2016) ("Many recent motions seeking determinations of patent ineligibility suffer from such reductionist simplicity—from characterizing as simply a mousetrap that which is in fact a better mousetrap. Courts faced with such motions must scrutinize reductive descriptions with great care.").

In arguing that "humans have always performed" the patented inventions (Mot. at 7) or that the claims are purportedly "silent as to *how* to achieve" anything (Mot. at 9), Pure Storage ignores key aspects of the various claims, including, e.g., (1) "content dependent data compression encoders," (2) "single data compression encoder," (3) "processor … configured" as recited, (4) "identify … parameters or attributes of the data," (5) analysis that "excludes analyzing based solely on a descriptor," (6) "data decompression engine," (7) "data packets comprise header containing control information," (8) "data tokens of the data packet," (9) "content independent data compression," among others. *E.g.,* '728 Patent claim 1; '203 Patent claim 1. Using literary "abbreviations" or "scientific notation" (Mot. at 7) is not the same as "compression," much less the same as the particularized digital data compression claimed in the asserted patents. Pure Storage's far-fetched argument that "humans have always performed" the claimed inventions or that "people can and do" (Mot. at 7) what is claimed fails.[9]

Pure Storage's assertion that the '728 and '203 Patents do not "improve[] the functioning of the computer itself" or merely "implement[] an old practice in a new environment" (Mot. at 9) is incorrect. The patents claim specific improvement in computer capabilities—e.g., improving the ability to more effectively compress/decompress digital data so as to increase the capacity of a computer system to store more data or to transfer data more efficiently.[10] That is not an old practice implemented in a computer environment. Rather, the patented inventions are technological solutions to technological problems.

### ii.    Pure Storage mischaracterizes the applicable law.

Pure Storage's arguments are premised on its sweeping and incorrect generalization that

---

[9] Indeed, a defendant in the related *Commvault* case does not even make this far-fetched argument. *See* DE Case No. 17-cv-925-GMS, D.I. 14 at 1-20.

[10] Indeed, the Texas court expressly held as such. Ex. 1 at 7 ("The '728 Patent is directed to patent eligible subject matter because it discloses a specific improvement in computer capabilities").

patents that are about "information analysis and processing" are all abstract (Mot. at 6-9). For example, the patents disclose compression techniques such as Lempel-Ziv, Huffman coding, data compaction, and data null suppression (*e.g.,* '728 Patent at 12:56-60), and, according to Pure Storage, all such compression techniques "mentioned in the patent" are patent ineligible and "nothing more than abstract mathematical steps applied to binary numbers" (Mot. at 8).[11] Pure Storage's argument contravenes §101 legal standard.

As the Federal Circuit in *Finjan*, *Enfish,* and *Visual Memory* explained, the law draws a line of distinction between patent claims in which "computers are invoked merely as a tool" (which may be patent ineligible) and patent claims that provide technological solutions to technological problems (e.g., "improvement in computer capabilities," which are patent eligible). *Enfish*, 822 F.3d at 1335-36; *Visual Memory*, 867 F.3d at 1258-59.[12]

Applying that law here requires rejection of Pure Storage's argument. Although Pure Storage seeks to blur and dramatically expand the boundaries of what is "abstract," here, it is not the mere fact that the asserted patents are in the digital domain that is relevant; rather, it is the fact that the problems that gave rise to Realtime's inventions are rooted in digital computer technologies, and also that the solutions provided in Realtime's inventions are improvements on the computer capabilities—e.g., increasing the capacity of a computer system to store more data or to transfer data more efficiently. (*See supra* at §IV.A.2.a.i.) Indeed, the claims at issue here are more clearly about technological solutions to technological problems than the claims held patent-

---

[11] Pure Storage's citations to extrinsic publications (e.g., Mot. at fn.34 and fn.74) are improper in a motion to dismiss. And in any event, they raise factual issues, precluding dismissal here.

[12] *See also McRO*, 837 F.3d at 1315 (rejecting argument that inventions "simply use a computer as a tool" and holding patents eligible because claims "focused on a specific asserted improvement in computer animation, *i.e.*, the automatic use of rules of a particular type."); *DDR*, 773 F.3d at 1257 (holding that patent is eligible because it "is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks."); *Alice*, 134 S. Ct. at 2358 (patent eligible if it "improved an existing technological process").

eligible in *Finjan*, which involved a software patent that claimed "receiving" a computer program, "generating" a "security profile that identifies suspicious code," and "linking" the security profile to the computer program. *Finjan*, --- F.3d ---, 2018 WL 341882, at \*2.

The cases Pure Storage cites are inapposite. For example, *RecogniCorp, LLC v. Nintendo Co.* involved an invention that "**does not even require a computer; the invention can be practiced verbally**." 855 F.3d 1322, 1328 (Fed. Cir. 2017). The claim in *RecogniCorp* was akin to "Paul Revere's 'one if by land, two if by sea' signaling system." *Id.* at 1326. In contrast, the claims at issue here require a computer and cannot be "practiced verbally"; instead, they are directed to technological improvements in digital-data compression. *Digitech Image Tech. LLC v. Electronics for Imaging, Inc.*, 758 F.3d 1344 (Fed. Cir. 2014) involved a patent that claimed "signals" that were transitory and "***ethereal***" (*id.* at 1349-50) or a mathematical ***formula***. In *Electric Power*, the court held ineligible a claim directed to the abstract idea of collecting and displaying information limited to field of power grids, where those claims were "mental process." 830 F.3d at 1356.[13] The claims at issue here are nothing like the claims at issue in the cases cited

---

[13] Other cases cited by Pure Storage are similarly inapposite. *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332 (Fed. Cir. 2017) involved a case where computer was used merely as a tool, i.e. to "restrict the invention's field of use." 850 F.3d at 1340. Moreover, *Intellectual Ventures* involved organizing data that was "***human***- and machine-readable." *Id.* at 1338. In contrast, data at issue in the asserted patents are digital data—i.e., data that is "***not easily recognizable to humans***." '728 Patent at 1:52-54; *see also, e.g., In re TLI*, 823 F.3d 607 (Fed. Cir. 2016) (claims directed to the idea of classifying and storing images in an organized manner, which is merely a method of "organizing human activity"); *Cyberfone Sys., LLC v. CNN Interactive Grp.*, 558 F. Appx. 988, 992 (Fed. Cir. 2014) ("collecting information in classified form, then separating and transmitting that information according to its classification"); *Content Extraction v. Wells Fargo Bank*, 776 F.3d 1343 (Fed. Cir. 2014) (claims directed to processing "hard copy documents"); *TDE Petroleum Data Sol., Inc. v. AKM Ent., Inc.* 657 Fed. Appx. 991 (Fed. Cir. 2016) (claims directed to gathering and processing data about a "well operation"); *Two-Way Media Ltd. v. Comcast Cable Comm., LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) (claims directed to "sending," "directing," and "monitoring" information); *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307 (Fed. Cir. 2016) ("the claim here is 'not directed to a specific improvement to computer functionality. Rather, [it is] directed to the use of conventional or generic technology in a nascent but well-known environment," i.e., email screening); *Affinity Labs v. Amazon.com*, 838 F.3d 1266 (Fed. Cir. 2016) (claims directed to delivering music content); *buySAFE v. Google, Inc.*, 765 F. 3d 1350, 1355 (Fed. Cir. 2014) ("creating a contractual relationship—a 'transaction

by Pure Storage—e.g., the asserted patents do not claim laws of nature, mathematical formula, ethereal signals, mental process, contractual relationships, or any other abstract idea.

**b.    Pure Storage's arguments regarding the '751 Patent are flawed.**

Pure Storage makes similar, faulty arguments regarding the '751 Patent,[14] and they fail for the reasons set forth above for the '728 and '203 Patents. Pure Storage argues that the asserted claims "merely recite results" (Mot. at 14-15). That argument has been rejected. In *Amdocs*, the district court held that patent claims reciting various functions such as "collecting," "storing," and "outputting" data were ineligible under §101. *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.* 841 F.3d 1288, 1293 (Fed. Cir. 2016). Applying Supreme Court precedent, the Federal Circuit reversed. After analyzing the patent specification, it held that the claims were not abstract and therefore were patent-eligible because they provided a technological solution to a technological problem, namely, "massive record flows." *Id*. In so doing, the court rejected the argument Pure Storage now makes. After discussing past §101 precedent in great detail, the court stated:

> "[t]he dissent offers a different paradigm for identifying an abstract idea … that a desired goal (i.e. result or effect), absent structural or procedural means for achieving that goal, is an abstract idea... We commend the dissent for seeking a creative way of incorporating aspects of well-known doctrine [in other areas of patent law] in the search for what is an 'abstract idea,' **but that it not now the law, either in statute or court decision**." *Id*.

The "result-based" argument was similarly rejected in *Visual Memory*, 867 F.3d at 1260-61, and *Finjan*, 2018 WL 341882, *4. For instance, *Finjan* involved a patent that claimed "identif[ying] suspicious code" without specifying how such identification was done. *Id*. at *2. The Federal

---

performance guaranty'"); *FairWarning IP v. Iatric Sys., Inc.*, 839 F.3d 1089 (Fed. Cir. 2016) (patent about "detecting improper access of a patient's protected health information"); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714–17 (Fed. Cir. 2014) (claims applying exchange of advertising for copyrighted content to the Internet).

[14] Pure Storage is incorrect that "[t]he '751 Patent is related to the '728 and '203 Patents" (Mot. at 13). The '751 Patent is not related (*i.e.*, not in the same patent family or share the same written description) to the '728 or '203 Patents. The '751 Patent is in the same patent family as Pat. No. 8,717,204, which the Texas court ruled is patent eligible. (Ex. 1 at 18-22.)

Circuit nevertheless rejected defendant's argument that the claims at issue "do not sufficiently describe how to implement that idea." *Id.* at *4. And the Texas court rejected this argument for the asserted and related patents. (Ex. 1.)

Pure Storage's argument also ignores the actual character of the claims, as they amply provide details regarding how results are achieved. For example, claim 1 of the '751 Patent describes "analyzing content … that excludes analyzing based solely on reading a descriptor," "selecting an encoder associated with the identified parameter…," and "utilizing a state machine,"[15] among other details. In other words, the claims provide specific structures and specific ways to perform the functionalities. Pure Storage's argument fails legally and factually.

### c.   Pure Storage's arguments regarding the '908 Patent are flawed.

Pure Storage's arguments regarding the '908 Patent merely recycle its arguments regarding the other patents in a perfunctory manner (Mot. at 18-19). That is a far cry from meeting its burden by clear and convincing evidence. Pure Storage's argument fails for the same reasons as set forth above for the '728, '203, and '751 Patents.

Pure Storage's assertion that the '908 Patent claims "a process that people can perform with pen and paper" ignores the actual limitations of the claims, including, e.g., "memory device," "data accelerator," "provid[ing] a first compressed data block," and two different compression techniques, among others. Moreover, courts have held the "pen and paper" arguments inapplicable and unhelpful. For example, the Federal Circuit Judge Bryson, sitting by designation, held patent claim to be eligible where the claims "involve[d] a several-step manipulation of data that, except

---

[15] Pure Storage points to dictionary definitions (Mot. at 16, fn.74) to argue that a "state machine" is purportedly "conventional." As an initial matter, the dictionaries are extrinsic publication improper to consider here. And in any event, the relevant issue here is not whether "state machine" in isolation is conventional. Pure Storage provides nothing other than *ipse dixit* to support any argument that the combination of elements as recited in the claims are conventional.

perhaps in its most simplistic form, could not conceivably be performed in the human mind or with pencil and paper." *TQP Dev., LLC v. Intuit Inc.,* 2014 WL 651935, at *4 (E.D. Tex. Feb. 19, 2014). Similarly, the claimed digital data compression techniques "could not conceivably be performed in the human mind or with pencil and paper." *Id.* An ordinary system of digital data compression, let alone the particular patented inventions here, would be impossible to perform in the human mind or by pencil and paper.[16] This is why courts have held that this analysis is "unhelpful for computer inventions" and "mislead[s] courts into ignoring a key fact: although a computer performs the same math as a human, a human cannot always achieve the same results as a computer." *Cal. Institute of Tech. v. Hughes Commcn's Inc*., 59 F. Supp. 3d 974, 994-995 (C.D. Cal. Nov. 3 2014). In short, Pure Storage's arguments are misplaced. Indeed, the patents themselves refute Pure Storage's flawed argument: "**digital data** is … **not easily recognizable to humans** in its native form." '908 Patent at 1:35-37.

Pure Storage's argument regarding "result-based" claiming is legally flawed (as explained above), and is also factually erroneous. For example, '908 Patent claim 1 provides limitations that teach how the invention works; it recites a "data accelerator" that is configured as claimed, including having the capability to use two different compression techniques. The argument that the claims are as "abstract as 'two compressions are better than one" (Mot. at 19) was the precise argument rejected by another court in denying §101 motion on the '908 Patent.[17]

In sum, the asserted claims can only be read as providing technological improvements and solutions specific to digital data compression and are not abstract. At the very least, this Court

---

[16] Notably, a defendant in the related *Commvault* case does not even make the far-fetched "pen and paper" or "human mind" argument. *See* DE Case No. 17-cv-925-GMS, D.I. 14 at 1-20.
[17] Ex. 3 at 1-2 ("Defendants contend … the patents at issue are directed to the abstract idea 'that two compression techniques are better than one.' … The Court is not persuaded by Defendants' oversimplification").

must accept all the allegations of the complaint and descriptions of the claimed inventions from the intrinsic record as true, and drawing all reasonable inferences in favor of Realtime, deny Pure Storage's motion. As others have held, the asserted patents are not abstract. (Ex. 1-3.)

**B.     Pure Storage Also Cannot Establish That the Claims Are Patent Ineligible Under *Alice* Step 2.**

Because Pure Storage cannot meet its burden under step 1 of the *Alice* framework, the inquiry ends there and step 2 need not be addressed. But even if *Alice* step 2 needs to be considered, Pure Storage's motion still fails because it also cannot meet its burden under step 2.

**1.     Under any reasonable characterization, the patented claims include limitations that are unconventional.**

*Alice* step 2 requires examination of the claim elements "both individually and 'as an ordered combination.'" *Alice*, 134 S. Ct. at 2355. A defendant cannot prevail on this step simply by showing that individual claim elements are "known in the art" or conventional. *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349–50 (Fed. Cir. 2016). Indeed, "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Id.* at 1350.

For example, *Bascom* involved a patent for "filtering Internet content." The district court, in concluding that the claims lacked inventive concept, "looked at each limitation individually," found that that the limitations "local client computer," "remote ISP server," "Internet computer network," and "controlled access network accounts" were described as "well-known generic computer components." 827 F.3d at 1349. The Federal Circuit, however, rejected this analysis and reversed the district court. Although the individual limitations recited "generic computer, network and Internet components," the court held that the claims nonetheless reflected an inventive concept because they "recite[d] a specific, discrete implementation of the abstract idea of filtering content." *Id.* at 1350. Indeed, the court further held that while "[f]iltering content on the Internet was already

14

a known concept, [] the patent describes how its particular arrangement of elements is a technical improvement over prior art ways of filtering such content." *Id.*[18]

As in *Bascom* and *Amdocs*, the elements of the claims here, when properly examined as an ordered combination, recite more than well-understood, routine, conventional activities. The inventive concept is readily apparent from the claims and patent specifications, which describe the problems in the prior art and explain how the claimed inventions solve these problems.

The '728/'203 Patents address the prior art problems, including: "their content sensitive behavior...often referred to as data dependency"; "significant variations in the compression ratio obtained when using a single lossless data compression technique for data streams having different data content and data size"; "extremely large number of application programs, some of which do not possess published or documented file formats, data structures, or data type descriptors"; "rate at which new application programs are developed and the need to update file format data descriptions." ('728 Patent at 2:7–3:55.) To solve these issues, the '728/'203 Patent claims required an unconventional combination of elements. For example, '728 Patent claim 1 required: (a) "content dependent data compression encoders"; (b) a different "single data compression encoder"; (c) a processor configured to (d) "analyze data within a data block to identify one or more parameters or attributes of the data"; (e) "the analyzing ... excludes analyzing based solely on a descriptor"; (f) "to perform content dependent data compression ... if the one or more parameters or attributes of the data are identified"; and (g) otherwise "to perform data compression with the single data compression encoder."

The '908 Patent addresses problems in digital-data compression, including: "high

---

[18] Similarly, in *Amdocs*, the Federal Circuit upheld claims that recited "arguably generic components, including network devices and 'gatherers' which 'gather' information," because the "generic components operate in an unconventional manner to achieve an improvement in computer functionality." 841 F.3d at 1300–01.

performance disk interface standards … offer only the promise of higher data transfer rates through intermediate data buffering in random access memory"; "[f]aster disk access data rates are only achieved by the high cost solution of simultaneously accessing multiple disk drives with a technique known within the art as data striping"; "problems with bandwidth limitations … by all other forms of sequential, pseudorandom, and random access mass storage devices." ('908 Patent at 2:20–54.) To address these, the claims require unconventional combination of elements, *e.g.*: (a) "a data accelerator" with two different compression techniques; (b) "a memory device"; (c) where the accelerator is configured to compress two data blocks; (d) including "a first data block with a first compression technique"; and (e) a "second data block with a second [and different] compression technique." (*Id.* 18:50-62.) The accelerator is unconventional, as it requires two different compression techniques and the structural capability of compressing and storing digital data faster than the digital data can be stored in uncompressed form.

The '751 Patent addresses specific problems in the prior art, including: "latency induced by the act of encryption, compression, decryption, and decompression"; "substantial latency caused by aggregating data packets due to poor data compression efficiency and packet overhead"; capacity transmission limitations using existing T1 lines; "[t]he limitation of highly significant bandwidth and/or long delays with co-location processing and long latency times." ('751 Patent at 1:40–5:22.) The '751 Patent solves these problems by an unconventional compression system to provide a multiplication of bandwidth and a reduction in transmission latency. (*Id.* at 5:28–29, 6:13–19.) Claim 1 requires, e.g.,: (a) "identif[ying] a parameter, attribute, or value of the data block," (b) analysis "that excludes analyzing based solely on reading a descriptor," (c) "selecting an encoder associated with the identified parameter, attribute, or value"; (c) "compressing data … with the selected encoder … utilizing a state machine"; (d) "storing compressed data block"; and

(e) wherein "the time of the compressing the data block and the storing the compressed data block is less than the time of storing the data block in uncompressed form."

In sum, the claimed inventions here do not merely recite well-understood, routine, conventional activities but, instead, are necessarily rooted in computer technology and provide a technological solution that improves computer functionality and overcome a problem specifically arising in the realm of compression of digital computer data. The patents amount to "significantly more" than simply claiming an abstract idea and are therefore patent-eligible. The asserted claims present an even clearer case of patent-eligibility than claims expressly approved by the Federal Circuit. *E.g., DDR*, 773 F.3d at 1259; *Finjan*, --- F.3d ---, 2018 WL 341882, *2.

  **2.**  **Pure Storage's arguments under step 2 are based on attorney arguments that not only rely on a misapplication of controlling law, but are also contradicted by the patents themselves.**

For step 2, Pure Storage pursues the same flawed analysis rejected by the Federal Circuit in *Bascom* and *Amdocs*, as well as the Texas court in ruling that the asserted and related patents are patent eligible. (Ex. 1.) Pure Storage asserts that the patents lack inventive concept because individual claim elements purportedly recite "conventional" or "generic" components. (Mot. at 9-10, 15-16, 19.) But the fact that some of the individual claim limitations may be performed using known components does not render them ineligible. *Bascom*, 827 F.3d at 1350 ("inventive concept can be found in the non-conventional and non-generic ***arrangement of known, conventional pieces***."). Moreover, the claimed components are not generic. As discussed above, the processor recited in claim 1 of the '728 Patent must be specially configured to perform the recited, non-conventional functions, including analyzing which "excludes analyzing based solely on a descriptor," and performing compression with a plurality of different encoders based on that analysis. Moreover, performing analysis that "excludes analyzing based solely on reading a descriptor" and using a "state machine" to achieve less time performance, as described in claim 1

of the '751 Patent is unconventional, as is using two different compression techniques to achieve faster performance as recited in claim 1 of the '908 Patent. The patents themselves confirm the unconventional nature of the inventions. At best, Pure Storage's "non-inventive" arguments are based on sheer attorney argument. That is not sufficient to satisfy its burden on its motion.[19]

Furthermore, Pure Storage's argument that "ordering of the elements" is not inventive discusses the claims stripped of key limitations (Mot. at 11, 15-16). For example, Pure Storage fails to discuss limitations such as, e.g., "excludes analyzing based solely on a descriptor" and "content dependent data compression," among others. Indeed, the patents specifically explain the problems associated with using analysis based solely on a descriptor (e.g., file extensions). *See* '728 Patent at 3:2-19. And its argument regarding the '908 Patent is just a few lines of generalities without discussion of specific limitations. (Mot. at 19.) Pure Storage's failure to examine even one asserted claim as a whole is fatal to its motion. A proper §101 analysis shows that the claims recite specific, discrete implementations of digital data compression, and the recited claim elements "operate in an unconventional manner to achieve an improvement in computer functionality." *Amdocs*, 841 F.3d at 1300–01. Indeed, the Court "must take the specification's statements about the purported invention to be true," and is "not free to accept [defendant's] contrary attorney argument" that the claims are directed to conventional means.[20] At the very least, this is a factual question that requires denying Pure Storage's motion.

### 3. The claims do not preempt use in all fields.

Even assuming the claims were directed solely to Pure Storage's purported abstract idea of "analyzing data and processing data based on the analysis" (Mot. at 6, 14, 18), Pure Storage cannot

---

[19] *See, e.g., Estee Lauder v. L'Oreal*, 129 F.3d 588, 595 (Fed. Cir. 1997) ("Arguments of counsel cannot take the place of evidence lacking in the record.").
[20] *MAZ Encryption Techs. LLC v. Blackberry Corp.*, 2016 WL 5661981, *5 (D. Del. Sept. 29, 2016); *Bascom*, 827 F.3d at 1352 (patents and facts are "construed in favor of [the patentee]").

show that the claims preempt all such idea. In fact, Pure Storage does not even make this argument, and instead argues about "parameters or attributes" (Mot. at 6). Pure Storage cannot spend the entirety of its motion oversimplifying the claims to argue that they are directed to one purported abstract idea, and then switch gears to argue that they preempt a different idea. By doing so, Pure Storage essentially admits that the claims do *not* preempt its alleged abstract idea.

In any event, the claims do *not* preempt all mechanisms for compressing data. For example, not every compression techniques includes "a data accelerator" or two different compression techniques to achieve faster performance. (*See, e.g.*, '908 Patent claim 1.) Nor does every application of digital-data compression techniques include "analyz[ing]…excludes analyzing based only on a descriptor," "content dependent" and "content independent" techniques (*e.g.,*'728 Patent claim 1; '203 claim 1). And, not every application of digital-data compression techniques requires selecting an encoder associated with an identified parameter, attribute, or value of the data, and compressing the data utilizing a state machine to achieve a "less time" performance (*e.g.,* '751 Patent claim 1). The patents here claim "specific invention[s] that did not monopolize an abstract idea." (Ex. 1, *e.g.,* at 16.)

### C.    Pure Storage's "Remaining Claims" Shortcuts Also Fail.

Pure Storage's motion should be denied also because it provides no clear and convincing evidence that ***all*** of the claims of the asserted patents (totaling 133 claims) are ineligible. Pure Storage merely provide conclusory attorney arguments asserting that some claims are "analogous" to a couple of the claims that it had mentioned (*see* Mot. at 12, 17, 20). That is neither clear nor convincing evidence. Pure Storage's citation to *Content Extraction* (Mot. at 12) does not help meet its burden. Moreover, *Content Extraction* is inapposite because the plaintiff there "never asserted in its opposition to [defendant's] motion that the district court should have differentiated any claim from those identified as representative" 776 F.3d at 1348.

For some other claims, Pure Storage merely isolates certain limitations to argue that they purportedly merely claim "results" or are "conventional" (Mot. at 12, 17, 20). Pure Storage's argument fails for the same reason as set forth above, e.g., Pure Storage ignores the actual limitations set forth in the claims. *McRO*, 837 F.3d at 1313; *Bascom*, 827 F.3d at 1350 ("The inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art."). Pure Storage cannot show that all 133 patent claims are ineligible under any standard, let alone the heightened standards on a motion to dismiss.[21]

Moreover, any reasonable interpretation of the claim language would demonstrate that the claims are limited to digital data compression and cannot be performed with pen and paper. Accordingly, claim construction would further illuminate the eligibility of the patents.

Further, "patent eligibility under §101 presents an issue of law … contain[ing] underlying factual issues." *Accenture Global Servs.*, 728 F.3d at 1340-41. In order to rule for Pure Storage, the Court will have to first resolve several disputed issues of material fact, including: (a) the core aspects of the patented inventions; (b) whether the claimed inventions can be performed with pencil and paper; (c) whether the claimed inventions are merely generic or standard implementations of abstract ideas; and (d) whether all additional claim limitations are well understood, routine, or conventional. *See supra*. There will likely be subsidiary issues of fact relevant to each issue as well. Viewing these and other facts in a light most favorable to Realtime precludes any dismissal at this stage. *Bell Atl. Corp.,* 550 U.S. at 555.

---

[21] The claims unaddressed by Pure Storage provide numerous other limitations and combinations, including, e.g., "data descriptors," "disk interface," "dictionary compression," "serial configuration," "real-time," "TCP/IP," "UDP Packets," "packetized data stream," "lossless" encoders, "synchronization point," "default data compression," and numerous other limitations arranged and combined in specific claimed ways. *See* '728, '203, '751, '908 claims.

January 25, 2018

OF COUNSEL:

Marc A. Fenster
Brian D. Ledahl
Reza Mirzaie
Paul A. Kroeger
C. Jay Chung
RUSS, AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
(310) 826-7474
Los Angeles, CA 90025-1031
mfenster@raklaw.com
bledahl@raklaw.com
rmirzaie@raklaw.com
pkroeger@raklaw.com
jchung@raklaw.com

BAYARD, P.A.

/s/ Stephen B. Brauerman
Stephen B. Brauerman (No. 4952)
Sara E. Bussiere (No. 5725)
222 Delaware Avenue, Suite 900
Wilmington, DE 19801
(302) 655-5000
sbrauerman@bayardlaw.com
sbussiere@bayardlaw.com

*Attorneys for Plaintiff Realtime Data LLC*